Camellia. We'll turn to the second case on our day calendar, AYDM Associates, LLC v. Town o Camellia. Go ahead, Mr. Barber. Yes. Peter G. Barber. I'm the attorney for Appellant AYDM Associates. As your Honors are well known, this case was dismissed on a motion for summary judgment, and I believe and I think the record is clear that there are material issues of fact that precluded summary judgment. We have two townhouse subdivisions, both approved by the same planning board, both asked to get DOH and required to get DOH approval for their water application. They both submitted the same application, which an application for a public water system is at 1470 and 1471, they're back-to-back. They're nearly identically filled out. It's municipal, it's distribution, we're located in an existing water district. The one for Mr. Longway, the town supervisor at Town o Camellia, he signs his own application. He basically says, DOH, yes, we're going to follow through, we're going to operate the water system that is approved by DOH and that's consistent with what the planning board required. For our application, he doesn't sign it. We've asked him repeatedly to sign it. He basically says, well, wait a second, there's a DOH wants to do a seeker review. And we're saying, oh, fine, you want to do a seeker review, but you first have to have the action. Seeker requires an action. The action here is the application. It's putting the cart before the horse. And we know that's true because after two years, after getting Judge Merrill, state Supreme Court judge, to basically say there was no justification, I couldn't have written a better decision for myself. Well, maybe you could have if the opinion cited something. It might be a little better decision because I'm a little bit at a loss as to what the basis was for the decision. Well, I can try to explain if I could. There's no justification, Your Honor, because all of the concerns that were raised, like site plan review, were issues that the planning board has delegated authority over under New York State town law. Towns don't have to have planning boards. But once a town board does, you delegate that authority. So the planning board, in its October 2010 decision approval, spoke. It said, we approve of this townhouse subdivision, and you need to get DOH approval. You go to DOH, you look at the regulations, you got to file an application, and you have to get stamped engineered plans. Nobody's debating that the stamped engineered plans were submitted. In fact, we submitted them repeatedly at various times. So what the judge was saying, Judge Merrill, I believe, was saying, was he was adopting argument, saying, look, there may be other things beyond the application that you need to do, Mr. Barber, but, town, you first have to give them the ticket to get into the game. And we didn't get the ticket. Well, that's a ticket to the Department of Health. Correct. I'm still having trouble understanding why it would be irrational for the town to say, we don't want to commit ourselves to making an application in our name to the health department for us to start up a water system until we know that this is really going to go forward, and we don't know that until these other requirements are satisfied. Why would that be an irrational, and I understand the state judge said it was, but I don't quite see why. Because New York State Town Law, and this gets, I have to say, gets into the weeds very quickly, but New York State Town Law section 190 says that if you're looking to extend a water line within an existing water district, it has to be town owned. So you can't do a transportation corporation, you can't do a private company, you can't do those things that a town attorney thought we should go off and do, and basically causes further and further delay. The judge said, no, town supervisor, you've got to sign the application because embedded in that application is DOH review and approval. DOH has exclusive jurisdiction over the standards by which water districts are... If we're down in the weeds of state law, and you went to the state court, and the state court said, no, I've sorted this all out, here's what the answer is, what makes it plausible that this was not a good faith? They thought that it was sensible to wait and see whether these other requirements are satisfied, which evidently was not a problem with the comparator subdivision. Right, and again, the comparator subdivision actually is owned and operated by the town supervisor, a competitor, as he's trying to encourage us to buy his subdivision before we even apply for ours. So that backdrop, I think, is very important, Your Honor. But only a small portion of the comparator involved the townhouses, and the general submission for planning board approval was made after the water application for Liberty. True, but I'm sorry, Your Honor, yes, but the two applications for water both dealt with the townhouse subdivision, part of the Longway subdivision. He was looking for that approval with that application, which is on page 1471 of the record. Okay. But in the appellant's case, the grant and the classification under the SEQR was different, and ultimately, it was because the DOH was not likely to approve that the town had to perhaps not rescind, but rethink whether or not . . . Yeah, what happened, again, Your Honor, is in October 2010, the planning board looked at its jurisdiction in terms of SEQR and determined it's an unlisted action because it didn't meet the threshold. I think it was 200 residential units. So they treated it as an unlisted action. It voted upon it, and it's approved. Nobody challenged it, and nobody disputes it. Now we're coming to fulfill the DOH requirement of the planning board to get DOH approval. DOH says, well, for realty subdivision, it's a type one action. And we basically said . . . and they said, and they notified the town in their December 9th letter, town, you're obligated as the applicant to file the type one action. And this kind of gets on a little side over here because, meanwhile, we're still fighting to get the application signed. Once you get the application signed, it all fell into place. DOH said it's crossing T's and dotting I's for the SEQR review because the SEQR review has already been done by the planning board. After . . . come on, it's putting water lines under roads that had already been built, you know, so are going to be built. I mean, it's already been approved. So it's . . . this idea that somehow there are concerns about site plans, so they get the town engineer to write letters five months afterwards to the planning board saying, hey, planning board, you might want to reconsider your approval from five months ago. Or planning board, maybe your review is premature because now DOH has a review. That's no and no. No because the planning board has already discharged its responsibility. You might not like what the site plan looks like. You may not like what the planning board did, but your opportunity to challenge it has long since gone. It's set in stone. And it's set in stone because we spend money. We buy the land. We get the set aside. We hire an engineer. We have a vested protected property right in that approval. And all we were met with was delay tactics after delay tactics. It's a ministerial act, and the reason why it's a ministerial act to sign the application, meaning there's no discretion, the best evidence is that the town supervisor signed it for his own application. If he thought there was a discretionary reason or a basis for saying no, then he would have sent it to the town attorney or town board. He signs it on his own. I mean, it's just, I thought I was in La La Land sometimes because I'm getting a state court judge to basically direct the town that they're refusing to do because they're saying there's these other problems out there you first have to resolve. And Judge Merrill said no. All those other things fall into place later, but we can't even get this review started until you sign the application. This is the application to which you drew our attention at 1471. Ours is 1470, and the other side, Mr. Longworth's is 1471. Thank you, Your Honor. Good afternoon, Your Honor. David Walsh for the appellees, the town of Pamelia and Lawrence Longway. In reading the appellant's brief, he spends an enormous amount of time, in my opinion, on the DOH form. But he completely ignores that there was, at the same time that the approval process was going on through the town, a parallel investigation and review by DOH. And in October of 2010, we admit that we gave them final approval. But on December 9, 2010, the town gets a letter from DOH saying, this is premature. You shouldn't have done this. You have to get your own engineer. Your seeker is wrong, and you need to change it. And you need to be the lead agent to change it. So faced with that, they're dealing with trying to comply with DOH requirements and still go forward with this project. In the midst of that, the plaintiff is dealing with DOH, and he won't accept that as an answer. And he does not want the town to be the lead agent, because he's afraid if it goes back to the town, they're going to change it. So the town is faced with these competing interests here. So, and I agree with you, Your Honor, what they did was rational. And what they did is, the DOH was not going to change their opinion that they needed a seeker one, a type one. And they were not going to change their opinion that the town was going to be the lead agent. It wasn't until after the article 78 that they changed their opinion, only with regard to who's going to be the lead agent. And when that was done, the DOH became the lead agent. They got the type one, and it was right after that, immediately after that, that the town signed the DOH letter, approving and accepting that. So that's why they waited, because DOH was doing their own independent investigation. Appellant is completely devoid of that, which the lower court spent an inordinate amount of time going through that fact pattern. And I agree with Your Honor, too, that the DOH letters of Liberty and of Emerald was just one of the comparators when the lower court looked at the selective enforcement. But in fact, what they did, they said, it's not even roughly equivalent, it's not similar situated, and they stated four or five reasons why it wasn't. Different zoning, different size, different requirements. That in and of itself, a reasonable person could look at and say, it's different. And it's not selective enforcement. Maybe you could help us understand, or help me understand the record a little better. The town offers several explanations for why the plaintiff's approval form was delayed, to show that it was a rational basis. Isn't the town signing of a DOH water supply plan ministerial, as suggested by opposing counsel? Well, the lower court said it was discretionary. They said it was discretionary because they relied on the town subdivision law, the town of Pamelia, which stated that the town may accept these facilities, not shall. So the lower court looked at it and said, it's not ministerial, it is discretionary. And in addition to that, the lower court also said that the town put forth a good faith basis as to why they weren't going to sign it right away. And what was that good faith basis? The good faith basis was that they were not satisfied with the location of the utility. That it was going under the concrete, where if they accepted the ownership, and there was a problem with it in the future, they'd have to cut into the concrete and through the pavement to repair this. And they didn't want to not incur that cost. So that was an ongoing issue that they had to deal with, which they made clear to the appellate, your honor. Let me ask you about Longway, as to whom there's been an oblique reference, at least. Is it accurate that he owned a competing townhouse subdivision? It's accurate that he owned other property, which the lower court has stated it was not similar in very innumerable respects to that of Emerald. And did he have any involvement in the plaintiff's water supply plan review process? He did initially, but after the article 78, he was instructed not to be involved anymore. And he complied with the court order, so the answer is he was initially, but then after the article 78, he was not. And the state supreme court did hold that there was no justification for his refusal to sign the DOH form. Let's say, I can't argue with that, your honor. That's certainly it, but as I agree with your honor, that that was certainly not a rational decision. There was a rational basis why, considering all the factors. Because understand, at the same time, the appellant sued the DOH with an article 78 also. And said, listen, you need to comply with this, and they withdrew that. And once they withdrew that, that was the key to DOH to then say, well, maybe we should reconsider all this, and they did. If the opposing side were able to show that there was deliberate delay of a competitor, that would rise to the level of malicious or bad faith intent. It would be a factor to, but it's interesting, your honor. If you read the record, I'm sure you have, is that DOH said, I don't care what the town does. They can do anything they want. Until you get a type one review, I'm not going to approve this. And they were adamant about that. And so the town could have submitted anything they wanted to, but until they got the type one review, they were not going to approve it. And that is clear in the record. So even if they submitted it a year before, it was not going to be approved until they got the type one. And initially it was because it was going to be, town was going to be the lead agent, but then DOH took over. And the town would have, if the town had submitted the application, the town, as things stood at that moment, the town would have had to do the type one review. That's the way it was initially before the article 78. That was the DOH's position, that they had to do it. And the plaintiff, or the appellate in this case, did not want that to happen. And he was arguing with the DOH, he says, I don't want the town to be the lead agent because I know that they're not going to approve all these things. And I don't want that to happen. So, and for him to say that at the end of the day, that the delay was solely based on the town not filing this DOH, is without basis. The delay was because the DOH's insistence, insistence on the type one seeker, which is contrary to the planning board's type two approval. And if the court doesn't have any more questions, I will rest. Thank you. Yes, your honor. I'm going to ask you one question. I'm sympathetic to your sense of you were in La La Land, because one thing I have trouble understanding is, how can there be a requirement? Where is the requirement that, as a matter of law, the town is obliged to sign the application, and that is a totally ministerial act, and yet the Department of Health can say, even though you're obligated as a matter of law to sign this, and you have no discretion not to sign it, we're not going to move forward until you sign it. That seems fairly bizarre. And it suggests to me that there must be some discretion. Otherwise, why would the Department of Health have to wait until this ministerial act is completed? All the legal requirements for going forward are already satisfied. Well, first of all, the genesis of the requirement to get DOH review came from the planning board. And Article 8 of the New York State Public Health Law details what that means. And it basically says that throughout the state of New York, including here in New York City, in theory, the New York State Department of Health has jurisdiction over all water installations. Quickly, having said that, they delegate it. They delegate it in Albany to Albany County, they probably delegate it to New York City down here. In the North Country, they don't, they take it on themselves. So they come up with this set of rules and regulations that you have to follow. And they come up with this realty subdivision, anything over five lots, you gotta get water approved by DOH. So it's a clear requirement under the New York State Public Health Law that all water lines have to be approved by DOH. By the DOH, yes. Okay. And- What says I have to file an application to the DOH, even if I don't want to, for whatever reason? Okay, well, simple, but not so simple. But because it's back on the idea that the planning board has already said this subdivision is going to be, is approved. And New York courts, like in the, I think it's a capital real estate versus town of Charlton, basically says that town boards can't act as a veto over that by basically not doing things that the law requires. And the law requires this application and requires it be municipally owned. They checked the box, saying it's going to be owned by the town because it's located within an existing town water district. All I've been trying to get from the very beginning on this case is an understanding that it's not the review by DOH. Which, by the way, I think may be ministerial, but I can understand there might be some factors you have to consider. It's just the act of signing is all they have to do, because the planning board is already required. They've already spoken for the town, saying this subdivision's going to be built. So what exactly, in your view, is the purpose of this ministerial act of signing? Well, I think one thing it puts them on notice, because look, the town planning board approves it. Months later, you've got this new system coming on board. You want to make certain that DENC, which is the dormitory, it's the north country, knows that it's coming to, because the one issue is capacity and whatnot. I mean, all these issues do come into play, but in the end, it's an engineering standard. Now, very quickly, I just want to go back to a couple issues that my learned counsel tried to raise. The comparator has size, same district, and yeah, that might be relevant if I had been denied a planning board subdivision approval. I wouldn't be here. I would say that's a discretionary decision, too bad, go home. We're past that. So size, location, density means nothing. We're residential, we're filing the same application, we're governed by the same ten state standards that New York and other states throughout the Northeast have agreed to, so that you can be a developer in here, in New York, and you can go to Connecticut, and your base can be following the same rules. So it's not rocket science in terms of the process, although you have to look at the statute and look at how the regs interplay. Well, what disputed issues of fact do you claim exist in the record? The court looked at the issues of whether this was an actual comparator and whether they were similar, and she found, based on the evidence, that they weren't. Right, and I believe that was wrong because I think . . . And what facts do you think are . . . Because I don't think that the comparator facts that the judge relied upon below dealt more with whether or not the subdivision itself should have been approved. Those facts are not material to whether or not the application with the wage should have been signed. The town of Pamelia, subdivision law, uses discretionary language stating that the town board may accept subdivision facilities by resolution. That language suggests not a mere ministerial mandatory act, but rather the exercise of some discretion. And in this court's prior decision in Sullivan versus Town of Salem, the court did distinguish the mandatory shall language from the discretionary may language. So the record here did show that the town does conduct reviews, and whether there's going to be potential dedication to infrastructure and other discretionary matters. Why do you say that this is simply mandatory? Because it's in the town of Pamelia subdivision law, and it uses the word may, because there are times when infrastructure, infrastructure includes roads, you can have a road that's private, so a town is not required to take a road. They can decide whether they want to take a road. Water is different when it's within an existing water district. The law prohibits private water companies. Don't want people out there, so it's, they may say may over there to cover all this other infrastructure, but when it comes to what is required by DOH, it's mandatory. Why can't they, why doesn't that give them a choke point where they can come back and say, well, we just don't want it. We're not saying you can go ahead, maybe you've got other legal obstacles that say you can't do it. But we don't want this to take responsibility for this infrastructure, so sorry. Right, right. Doesn't that give them some authority, maybe a backdoor authority, maybe not what the town planning board contemplated, to take an action? Why are they obligated, I mean, I understand what you're saying, you can't operate the water facility. But why does that obligate the town to take on a water facility if they have some reason to think they don't want to? Because, again, the planning board is given exclusive jurisdiction over all matters, including water. They determine whether or not, what are the requirements to get a subdivision? And among them, water and sewer and highway. Water and sewer are required, but we, planning board, are not the body that has to grant that authority. You have to go to the Department of Health. They didn't say, go check with the town. They said, go to the Department of Health and get your approvals. It was very easy to get the wastewater sewer stuff done by DEC. DOH went off the rails, really, because DEC didn't require a signing by the supervisor. We just showed up with our plans and here we are, and we've got improvement within a month. DOH required a signature. Why? Why would they require a signature and say, you have to get a signature from this guy, but he absolutely is required as a matter of state law to give that signature. But we still want you to get that signature. What is the point of that? It's actually in the note underneath as to what it means when you sign. You basically are obligating to maintain that system after it's been designed and built. So basically telling the town, hey, the planning board approved a subdivision. DOH is approving the water, but you may want to readjust your rates so that you can pay for the maintenance and whatnot. To me, it's more akin to a notice than anything else to the chief executive officer that, hey, there's activity going on in your town. We're putting things under the ground. You might want to be aware of it while we review it. Please sign here to make sure you understand your obligations to maintain it. So following that line of reasoning in response to Judge Lynch's question, the planning board and DOH are the sole significant decision makers. The town has no role, no particular role. Not that's, it's planning board, but that's it. The planning board. But there's no other part of the town government that has any role. Oh, they have, again, the ministerial role here. They may have to sign off on a highway permit for a curb cut or something like that. And they may have to raise taxes or adjust rates and so on is what you just said. And they're going to be obligated to do that. Although that's not actually true because the way it works is the people within the new district, the new extension, they pay for the first level of it. And then it's just simply just a, it's a rate to recover the maintenance costs. It's the new people who are going to be paying for the water to their subdivision, or to their houses, I should say. Thank you very much. Thank you. We reserve the decision.